## In re Anonymous No. 13 D.B. 80

Disciplinary Board Docket no. 13 D.B. 80.

To The Honorable Chief Justice and Justices of The Supreme Court of Pennsylvania

HARRINGTON, *Chairman*, September 15, 1981 — Pursuant to Pa.R.D.E. 208(d)(iii), the Discipli-

nary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

A complaint was filed by Office of Disciplinary Counsel against [ ] respondent in this action, charging him with several violations of the Disciplinary Rules of the Code of Professional Responsibility. No answer was filed to the petition for discipline nor was there any other pleading filed. A hearing committee [ ] was appointed. The committee scheduled a hearing for July 23, 1980. Appropriate notices were sent to and received by respondent. On that day, respondent was contacted by telephone, reminded of the proceedings and invited to participate. He announced his intention not to appear nor to be represented by counsel. Petitioner at the hearing was represented by [ ], Assistant Disciplinary Counsel, who offered exhibits and called witnesses to testify. At the close of testimony, the hearing committee found respondent to be in violation of the following Disciplinary Rules: D.R. 6-101(A)(3), D.R. 7-101(A)(1), D.R. 7-101(A)(2), D.R. 7-101(A)(3), and D.R. 1-102(A)(6).

Respondent was notified of the findings and further advised that a hearing would be scheduled April 14, 1981, at which time the committee would consider evidence on the nature and extent of discipline to be recommended. Formal notice of that date and time was sent to and received by respondent. Respondent refused to attend nor was he represented by counsel.

After receiving testimony on the type of discipline to be recommended, the hearing committee

recommended that respondent be suspended for a period of 12 months.

The board concurs in the hearing committee findings of fact and law and believes as the hearing committee did that respondent should be suspended but that the recommendation of 12 months suspension is not adequate and would in place thereof recommend a three year suspension from the practice of law.

## II. FINDINGS

[A] died on August 14, 1966, without a will. Within a few days following her death, [respondent] was retained to represent the estate. At about the same time, he met with decedent's family, where it was agreed that [B] would act as administrator. The estate contained certain "properties" located at the following addresses: [ ] Street, [ ] Street, [ ] Street, [ ] Street, and certain properties located in the vicinity of [ ] Street. Three or four of the properties were rented or partially rented at that time. In response to a question to him, respondent estimated that it would take approximately six months to close the estate.

In the years from 1966 to 1974, respondent collected rents from the rental property and made disbursements to various utilities for insurance premiums, attorney's fees, some taxes and made advances to [C], decedent's mother. While there is not a great deal of testimony concerning the properties located at [ ] Street, [ ] Street, [ ] Street and [ ] Street, it does appear that one of the properties was sold and the others were "nailed up."

At some time prior to 1971, the Redevelopment Authority condemned the premises at [ ] Street and made an offer of settlement of $9,700. The offer was accepted formally and an appropriate instru-

ment for that purpose was executed by [B], the then administrator.

Between 1966 and 1971, respondent did nothing to close the estate nor does the record disclose any vigorous effort on the part of the survivors to force respondent to take action to close the estate. It is clear, however, that from 1971 on, respondent was urged, beseeched and demanded to take action to close the estate. [B] inquired of respondent about payment of the $9,700 agreed to in settlement of the condemnation claim. At first, respondent told [B] that the Redevelopment Authority would not release the money. This was a misrepresentation. In fact, the money was available for distribution. Out of frustration, [B], although continuing as administrator, turned this matter over to [D], his sister-in-law.

[D], in her testimony, was very positive about her efforts to contact respondent and to get the estate closed.

In 1976, [D] contacted [respondent] and arranged for members of the family to meet with him concerning the estate. At that time and at that meeting, respondent assured members of the family that the estate would be closed and the money distributed. As a matter of fact, nothing was done at all until October of 1978, when [D] attempted to call and speak with [respondent] twice a day until the end of November, 1978. In that entire time, she never had the courtesy of a return telephone call nor did she ever have any explanation for respondent's refusal to speak with her nor did respondent ever give an explanation as to why the estate had not been closed, at this point, some 12 years after the death of [A]. [D] continued in her efforts to contact respondent. She made several different appointments to meet with respondent at his office, all of which were cancelled.

On November 23, 1978 respondent received a certified letter from [D] demanding an appointment, and this, too, was ignored.

When [D] received no response to her letter, she retained [E] to represent the estate.

After the Redevelopment Authority and respondent had agreed on a settlement figure for the real estate condemnation, the Authority set up a closing date at [ ] Insurance Company, at which the matter would be closed and the funds distributed. Respondent failed to appear at the closing and made no other arrangements. In June of 1973, the funds were placed on deposit with the prothonotary and remained there until September, 1979, when distribution was made.

## III. DISCUSSION

The court has for its consideration a case in which respondent accepted employment to represent the estate of decedent in 1966. At that time he gave some assurance that the matter could be concluded in six months. Thirteen years later he was fired by his clients because he had grossly neglected the matter entrusted to him. Respondent during that time ignored repeated rquests by his client to attend to the business of closing the matter. The estate presented no complicating factors that could not be resolved by the application of minimal professional talent and diligence.

After the real estate had been condemned and a settlement figure agreed thereon and where the only act that was needed by the attorney to complete the transaction was to appear at a closing, he failed to do so and took no step between 1972 and 1979 to obtain the funds from the settlement.

The matter is further aggravated by respondent's failure to reply to the formal petition for discipline

or to attend either of the hearings scheduled by the hearing committee and by failure to offer any explanation for such behavior.

Respondent has treated everyone involved with the Estate of [A] deceased, with conspicuous indifference and studied insolence. On the morning of the first hearing scheduled for July 23, 1980, respondent spoke with Assistant Disciplinary Counsel and also Chairman of the hearing committee. He informed both of them that he had no intention of appearing at the hearing. It is obvious that respondent is prepared to treat all with equal disdain.

By his misconduct, respondent has caused considerable financial loss for those entitled to share in the Estate of [A]. According to the testimony of [B], the rental property could not be supported because of the delay in the will probation and the rental properties were eventually "nailed up." The heirs were denied the use of the proceeds from the settlement of the condemnation action for more than six years because respondent refused to schedule the closing date with the Redevelopment Authority agents. After the settlement figure was agreed on, interest on that amount was paid from September 30, 1970 to June 6, 1973. No interest was paid after that date. The estate was required to pay additional counsel fees to Attorney [E] to perform services which should have been performed by respondent, who received $2,000 in fees.

It may be that there is some acceptable explanation for respondent's failure to take the necessary action to close the estate and distribute the proceeds to the heirs. Perhaps there are some mitigating factors in the professional or personal life of respondent that would influence the fact finders. All mitigating circumstances are properly to be considered in a disciplinary proceeding. In this instance, however, respondent has elected not to ap-

pear and to make known such circumstances if any exist.

After the hearing committee had found from the facts and an application of the law that respondent was in violation of the Rules of Disciplinary Enforcement, a separate meeting was held on April 14, 1981 to receive evidence on the type of discipline to be recommended. (RDB 89.151(a)) Respondent refused to attend.

At the hearing, Assistant Disciplinary Counsel offered into evidence the prior Disciplinary Record of respondent,* which included the following:

C[i]-73-16 (1973)—in which a client retained respondent to reduce a family agreement to written form for the client to sign. Respondent neglected the matter for two months and then completed the agreement only after the client had filed a complaint with the Disciplinary Counsel.

C[1]-74-508 (1974)—in which respondent neglected to file signed affidavits for inheritance taxes for more than four months.

C[1]-74-401 (1974)—Respondent neglected to proceed promptly with litigation after commencing the action.

C[1]-76-65 (1976)—Respondent was very slow in closing an estate although in this instance the delay was not entirely attributable to him.

C[1]-77-587 (1977)—Respondent so neglected his duties as attorney for an estate, that it was not closed for nearly six years.

C[1]-79-514 (1979)—Respondent was appointed Master in a divorce proceeding in which he heard testimony in June, 1978. He filed no report until November, 1979.

---

*Individual informal admonitions were administered as discipline for each of the cases listed.

In light of this outrageous record of disciplinary infractions, coupled with respondent's neglect in dealing with this matter, the board does recommend an increase in the period of suspension from the one year recommended by the hearing committee to three years.

## RECOMMENDATION

The board respectfully recommends that respondent be suspended from the practice of law for a period of three years and that no application for reinstatement may be filed until the end of the three year period.

Mrs. Hammerman dissents and would recommend a one year suspension.

Mr. Elliott and Mrs. Neuman did not participate in the adjudication.

## ORDER

O'BRIEN, *C.J.*, And now, October 16, 1981, the recommendation of the Disciplinary Board dated September 15, 1981, is accepted; and it is ordered that [respondent] be and he is suspended from the Bar of this Commonwealth for a period of three years, and he shall comply with all the provisions of Rule 217 of the Pennsylvania Rules of Disciplinary Enforcement. Application for reinstatement may not be filed until the end of the three year period.